IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

UNITED STATES OF AMERICA,           )
                                    )
                  Plaintiff,        )          Criminal Case No. 05-351-KI
                                    )
     vs.                            )          OPINION AND ORDER
                                    )
DEVON L. BENTLEY,                   )
                                    )
                  Defendant.        )

     Karin J. Immergut
     United States Attorney
     District of Oregon
     Fredric N. Weinhouse
     Assistant United States Attorney
     1000 S.W. Third Avenue, Suite 600
     Portland, Oregon 97204-2902

          Attorneys for Plaintiff

     David T. McDonald
     808 S.W. Third Avenue, Suite 425
     Portland, Oregon 97204

          Attorney for Defendant

Page 1 - OPINION AND ORDER

KING, Judge:

Defendant Devon Bentley is charged with one count of felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1) in a superseding indictment.  Before me are defendant's motions to suppress all evidence recovered as a result of a search warrant for the residence at 4435 SW Mueller Drive #P202, Beaverton, Oregon ("Apartment P202") and to dismiss the superseding indictment.  For the following reasons, I deny the motions.

## FACTUAL BACKGROUND

Portland Police Bureau Officer Peter McConnell presented an affidavit and requested a search warrant from Multnomah County Circuit Court Judge Michael Marcus on July 13, 2005.  Judge Marcus reviewed the affidavit and issued the warrant.  The affidavit describes facts beginning with the non-fatal shooting of James Hartley and Mikael Pugh on June 25, 2005.  After the shooting, police officers located a knife and 9 mm and .45 caliber shell casings near the scene.  Neither victim was able to describe the shooter and no suspects were identified at the scene.

On July 2, 2005, McConnell interviewed a confidential informant who provided information to McConnell in exchange for not going to jail on an unrelated charge.  According to McConnell's affidavit, the informant related that defendant, whom the informant had known for years, told the informant that he had shot Hartley.  The informant stated that defendant said "I handled that" when referring to the shooting, and also said that "I didn't even do it right," because he had only shot Hartley but not killed him.  In addition, the informant related that defendant had described the shooting to him in detail, including the fact that Hartley had pulled a knife immediately before the shooting.  The informant also told McConnell that defendant had

been living under the assumed name of "Eddie Hale," had a driver's license in that name, and that defendant was driving one of two vehicles—either a green Chevrolet Lumina or a burgundy truck which was either a GMC Yukon or a Chevrolet Tahoe.

The informant gave McConnell defendant's cellular telephone number.  In response to a subpoena, Sprint advised the police that the account for the number provided was in defendant's name, with an address of 3516 N. Haight Avenue, Portland, Oregon.  The informant told McConnell that he was having trouble getting defendant's address.

McConnell's affidavit states that although the informant was a convicted felon who wanted to avoid going to prison, he believed the informant's information to be accurate.  The informant provided McConnell with information about defendant, including  false identity, defendant's telephone number, descriptions of the vehicles defendant drove, and where defendant could be located, all of which were investigated and proved to be true.  The informant also gave McConnell information about the Hartley shooting that was not commonly known, namely that Hartley was in possession of a knife.

McConnell relates in his affidavit that on July 5, 2005, he was involved in surveillance of a green 1998 Chevrolet Lumina registered to Eddie Hale.  When an officer stopped the vehicle, the driver was not the defendant.  On July 6, 2006, the informant called McConnell and told the officer that he had still not been able to get defendant's address, but that defendant was at Alberta Park in Portland almost every day.  McConnell drove to the park and observed a maroon 1995 GMC Yukon leaving.  The GMC Yukon was also registered to Eddie Hale.  Officers later contacted the driver, who presented a driver's license in the name of Eddie Hale.  One of the officers observed tattoos on the subject's arms consistent with those listed for defendant.  The

Page 3 - OPINION AND ORDER

officer later viewed a booking photograph of defendant, and believes that the person who

presented the "Eddie Hale" driver's license was defendant.  Surveillance of this individual

continued on July 6 and 7, 2005, but was lost both days before he reached his final destination.

On the evening of July 12, 2005, another police officer told McConnell that he observed

defendant get into the driver's side of the Chevrolet Lumina and drive away from Alberta Park.

McConnell followed defendant as he drove to several locations, finally parking near the corner of

SW 156th Avenue and SW Donna Street.  The officer accompanying McConnell believed he

observed defendant going into an apartment complex on SW 156th Avenue, but could not tell

which unit defendant went into.  On the morning of July 13, 2005, Detective Mitch Hergert

established surveillance, and saw defendant come out of an apartment with a woman and drive

away in the Lumina.  Hergert found that the address of the apartment defendant had exited was

4435 SW Mueller Drive, Apartment P202.

On the afternoon of July 13, 2005, police observed defendant enter and drive off in the

GMC Yukon.  McConnell followed the GMC Yukon and directed another officer to stop and

arrest defendant. That officer located the "Eddie Hale" driver's license on defendant's person.

Later that day, McConnell asked defendant where he had spent the previous night, and defendant

told him he had stayed at his girlfriend's in Beaverton.  Defendant told McConnell that he did not

have a residence.  McConnell submitted his affidavit to Judge Marcus on the evening of July 13,

2005, declaring he had probable cause to believe that evidence of various named crimes would

be found in the two vehicles and in Apartment P202, and asking the court to issue a search

warrant for the vehicles and the apartment for evidence, including any 9 mm or .45 caliber

handguns.  The judge issued the warrant.

Page 4 - OPINION AND ORDER

McConnell returned the warrant two days later, indicating that among the items seized in the search of Apartment P202 were a Ruger .45 caliber pistol and a Century Arms .308 caliber rifle.  The federal government obtained an indictment against defendant on September 9, 2005 for one count of felon in possession, involving two firearms, occurring on July 13, 2005.  Following additional investigation, the government obtained a superseding indictment on April 5, 2006, expanding the dates of the offense from on or about June 26, 2005 to July 13, 2005.

## DISCUSSION

I.    <u>Defendant's Motion to Suppress Evidence</u>

Defendant moves to suppress all evidence recovered as a result of a search warrant for Apartment P202 on the ground that the affidavit in support of the warrant does not establish probable cause that the items sought to be seized would be found at that place.  A warrant must be supported by probable cause.  The question is whether, viewing the totality of the circumstances, the judicial officer who issued the warrant had a substantial basis for finding a fair probability that contraband or other evidence of a crime would be found in the place searched.  <u>Illinois v. Gates</u>, 462 U.S. 213, 238 (1983).  A court reviewing the issuance of a warrant is "limited to the information and circumstances contained within the four corners of the underlying affidavit."  <u>United States v. Bertrand</u>, 926 F.2d 838, 841 (9th Cir. 1991) (quotation omitted).

The issuing court is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense.  <u>United States v. Angulo-Lopez</u>, 791 F.2d 1394, 1399 (9th Cir. 1986) (informant statements about drug trafficking,

Page 5 - OPINION AND ORDER

affidavit containing statement of sister that defendant was currently selling heroin, and police surveillance units observing pattern of exchanging packages at shopping center). The issuing court is also entitled to consider the training and experience of the law enforcement affiant, when interpreting seemingly innocent conduct. United States v. Gil, 58 F.3d 1414, 1418 (9th Cir. 1985) (observations of suspicious deliveries, car switches, use of pagers and public telephones, recovery of two kilograms of cocaine from woman who had just been in defendant's car). Finally, in "borderline cases, preference will be accorded to warrants and to the decision of the magistrate issuing it." United States v. Terry, 911 F.2d 272, 275 (9th Cir. 1990) (quotation omitted).

 A. Reliability of Informant

 Where a search warrant affidavit is based in whole or in part on information provided by an informant, the reviewing court must analyze whether probable cause exists, based on the totality of the circumstances, to determine a sufficient level of reliability and basis of knowledge for the information. United States v. Bishop, 264 F.3d 919, 924 (9th Cir. 2001). The "veracity" and "basis of knowledge" standards set forth in Aguilar v. Texas, 378 U.S. 108, 113 (1964) and Spinelli v. United States, 393 U.S. 410, 415 (1969) are factors now intertwined in the totality of the circumstances test. Gates, 462 U.S. at 238; Bishop, 264 F.3d at 925.

 Courts may employ a number of methods to determine whether an informant's information is reliable, including demonstration of veracity through independent police corroboration or admission against penal interest, whether the informant previously provided information that has been relied on and proven truthful, and whether the information is corroborated by other informants. Gates, 462 U.S. at 242; United States v. Alvarez, 358 F.3d

1194, 1203-04 (9th Cir. 2004); <u>United States v. Freitas</u>, 716 F.2d 1216, 1222 (9th Cir. 1983).  An

accumulation of innocent details can sufficiently corroborate an informant's report, even if there

is no independent verification of the incriminating activity.  <u>Draper v. United States</u>, 358 U.S.

307, 313 (1959); <u>Freitas</u>, 716 F.2d at 1223.  When considering the basis of knowledge, courts

look to how the informant came by that knowledge.  <u>Angulo-Lopez</u>, 791 F.2d at 1396.  Weakness

in either the veracity or basis of knowledge factor is not fatal to a finding of probable cause, so

long as the issuing magistrate had a substantial basis for the finding.  <u>Id</u>.

Defendant argues that McConnell had never previously used this informant, that the

informant's statements were not against his penal interest, and that the informant is a convicted

felon who was facing revocation of his federal supervised release at the time he provided the

information regarding the defendant to McConnell.  Defendant asserts that the only information

that police corroborated had nothing to do with the shooting or with the alleged possession of

firearms, and that such corroboration does not establish a fair probability that the accused

participated in the shooting.

Viewing the totality of the circumstances, I find that the circuit court judge had probable

cause to determine that the informant was reliable.  The informant's veracity was based on

independent corroboration, in the course of the police investigation, of nine facts relayed by the

informant: the downtown location of the shooting, that no one was killed, that the intended

victim was James Hartley, that a knife was involved, that defendant was using the assumed name

Eddie Hale, the descriptions of two vehicles later found to be registered to Eddie Hale, the

defendant's cellular telephone number, that defendant frequented Alberta Park almost every day,

and that defendant believed police were watching him, corroborated by surveillance officers who

witnessed defendant driving evasively on July 6, 2005.  These are sufficient to establish the

veracity of the informant, even in the absence of corroboration of the informant's statement that

defendant claimed he shot Hartley.  Draper, 358 U.S. at 313; Freitas, 716 F.2d at 1223.  In

addition, the informant's evidence regarding defendant's connection to the crime is more reliable

because it came from a first-hand conversation with the defendant, rather than through hearsay.

Bishop, 264 F.3d at 925.

       B.      Nexus Among the Crime, Things to be Seized, and Place to be Searched

To justify the search of a particular place there must be a "reasonable nexus" between the

residence to be searched and the evidence sought.  United States v. Chavez-Miranda, 306 F.3d

973, 978 (9th Cir. 2002).  Defendant argues that the affidavit does not show a sufficient

relationship connecting the crime, the thing to be seized, and the place to be searched.

Defendant argues that the evidence should be suppressed based on United States v.

Bailey, 458 F.2d 408, 412 (9th Cir. 1972).  In Bailey, the court suppressed evidence obtained in a

search of a house because the affidavit in that case disclosed only that the defendant had been

seen at the house and that another suspect was arrested there.  The court found that the affidavit

contained no facts from which it could be inferred that the defendant was other than a casual

social guest at the residence.  Similarly, Greenstreet v. County of San Bernardino, 41 F.3d 1306,

1309 (9th Cir. 1994) describes the suppression of evidence when an affidavit indicated a single

instance of a known drug offender being seen at the alleged locus of a drug ring and then, later, at

a residence.  The court found that there was no information as to how many times the drug

offender went to the residence, and, without other information as to his activities, there was not

sufficient information to permit an inference that he was other than a casual social guest at the

residence.  Finally, defendant cites <u>United States v. Sartin</u>, 262 F. Supp. 2d 1154, 1156-57 (D.

Or. 2003).  In <u>Sartin</u>, this court suppressed evidence because the affidavit did not give probable

cause to believe that a weapon would be found at the residence to be searched.  The affidavit

described that there was probable cause for the search of defendant's residence because the

defendant's boyfriend was believed to have a 9 mm weapon which police expected to find at the

defendant's residence.  However, the affidavit provided no connection between a shooting being

investigated and the defendant's boyfriend, including no allegation that he was the shooter.

The critical fact that distinguishes this case from the cases defendant cites is his own

statement to McConnell that he did not have a residence.  In addition to defendant's presence at

Apartment P202, the circuit court judge had before him several facts that formed a logical

connection between defendant, the alleged crime, the apartment, and the evidence sought there.

The informant told McConnell that defendant claimed he shot Hartley.  Nine mm and .45 caliber

casings were found near the scene of that shooting.  No firearm was recovered at the scene.

Defendant told McConnell before the officer applied for the warrant that defendant had no

residence, and that he had spent the previous night in his girlfriend's apartment.  A police officer

saw defendant leave Apartment P202 earlier that morning.  The informant, who had known

defendant for many years, told McConnell that he was not able to get defendant's address.  Police

had been unable to track defendant to any residence other than Apartment P202.  Unlike the

affiant in <u>Bailey</u>, McConnell's affidavit includes the officer's recitation of his probable cause

belief that evidence relating to the attempted murder would be found in Apartment P202.

In these circumstances, where an informant asserted that defendant claimed to have

committed the shooting, and defendant asserted that he had no residence, it was reasonable for

the circuit court judge to conclude that if evidence of the shooting was to be found anywhere, it would be at Apartment P202.  I find that there was sufficient evidence in the affidavit to warrant the inference of a reasonable connection between the defendant and the contents of Apartment P202, and that the circuit court judge had a substantial basis for finding a fair probability that evidence of the Hartley shooting would be found in Apartment P202.

Defendant also contends that the evidence should be suppressed because nowhere in the affidavit does McConnell state that he had probable cause to believe Apartment P202 was the *defendant's* residence.  However, the residence to be searched need not be that of the defendant, so long as the affidavit sets out the necessary connection between the evidence of the crime sought and the subject residence.  Although a suspect's presence at a dwelling not reasonably thought to be his abode, without more, is not sufficient to establish a meaningful relationship between the suspect and the contents of the house, United States v. Curzi, 867 F.2d 36, 46 (1st Cir. 1989) (citing Bailey, 458 F.2d at 411-12), in this case there was more.

Finally, even if the warrant was based on insufficient probable cause, the evidence need not be suppressed if the officer relied in good faith on the validity of the warrant and that reliance was objectively reasonable.  United States v. Leon, 468 U.S. 897, 922 (1984).  McConnell's affidavit was approved by his supervisor, the deputy district attorney, and Judge Marcus.  There is no allegation that the affiant made misleading statements within the four corners of the affidavit and no assertion that the warrant was facially deficient.  I find that McConnell's reliance on the warrant was objectively reasonable.  Id.

Page 10 - OPINION AND ORDER

II.    <u>Defendant's Motion to Dismiss Superseding Indictment</u>

Defendant also moves to dismiss the superseding indictment.  Defendant argues that the allegation in the superceding indictment that he possessed the firearms on a range of dates violates the notice requirement in Fed. R. Crim. P. 7(c) and his rights under the Fifth Amendment to due process and to be free from double jeopardy.

A.    <u>Violation of Fed. R. Crim. P. 7(c) and Fifth Amendment Due Process</u>

Due process guarantees a criminal defendant the right to be informed of the nature and cause of the accusation against him.  <u>Russell v. United States</u>, 369 U.S. 749, 761 (1962).  An indictment must furnish the defendant with a description of the charges against him in sufficient detail to permit him to prepare his defense, to ensure that the defendant is prosecuted on the basis of facts presented to the grand jury, to enable him to plead double jeopardy against a later prosecution, and to inform the court of the facts alleged so that it can determine the sufficiency of the indictment.  <u>United States v. Miller</u>, 771 F.2d 1219, 1226 (9th Cir. 1985).

The notice requirement in the Federal Rules of Criminal Procedure states that an "indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged."  Fed. R. Crim. P. 7(c).  Courts have construed this language to require, like the Due Process Clause, that the indictment give sufficient notice of the crime to prepare a defense and plead double jeopardy.  <u>United States v. Buckley</u>, 689 F.2d 893, 899 & n.5 (9th Cir. 1982).

Defendant argues that the superseding indictment's expansion of the dates charged for the firearm possession, from "July 13, 2005" to a range of "from on or about June 26, 2005 to

July 13, 2005," makes it totally unclear at one point within the time frame that he is said to be in

unlawful possession. He argues that the failure to allege a specific act of possessing the two

firearms fails to put defendant on notice as to when and where the crime was alleged to have

occurred. The result, according to defendant, is that he does not have notice of the specific

charge he is required to defend or have the ability to defend in case other proceedings are taken

against the defendant for a similar offense. Therefore the superseding indictment violates both

Fed. R. Crim. P. 7(c) and the Due Process Clause.

It is clear that an indictment may be legally sufficient even if it includes an expanded time

period during which the alleged offense occurred, so long as that time period is bounded. United

States v. McCown, 711 F.2d 1441, 1450 (9th Cir. 1983) (holding that an indictment was adequate

where it alleged a conspiracy that continued from "on or about June 17, 1981, to on or about

October 10, 1981"); see also Valentine v. Koneth, 395 F.3d 626, 632 (6th Cir. 2005) (rejecting a

challenge based on the lack of time- and date-specific counts to an indictment charging child

abuse occurring between March 1, 1995 and January 16, 1996). Compare United States v. Cecil,

608 F.2d 1294, 1297 (9th Cir. 1979) (finding an indictment insufficient where it alleged an open-

ended conspiracy "beginning on or before July, 1975 and continuing thereafter until on or after

October, 1975").

Here, the period charged in the superseding indictment is 18 days. The indictment

otherwise unambiguously sets forth all the elements necessary to constitute the offense by

tracking the words of the statute charging the offense. United States v. Fitzgerald, 882 F.2d 397,

399 (9th Cir. 1989). Because felon in possession can be a continuing offense, and the

superceding indictment afforded defendant notice of the elements of the offense with which he

Page 12 - OPINION AND ORDER

was charged along with a bounded time frame within which the alleged crime occurred, the

superceding indictment does not violate due process or the notice requirement of Fed. R. Crim.

P. 7(c).

      B.    <u>Violation of Sixth Amendment Right to be Free of Double Jeopardy</u>

      Defendant also argues that the failure to specify a date within the range in the superseding

indictment violates his right to be free from double jeopardy.  He argues that he could go to trial

on the superceding indictment and, even if acquitted, be re-indicted for the same offense.  This

concern is unfounded because acquittal in connection with the superceding indictment would

prevent the government from re-charging the defendant with that offense or a related federal

offense at any point within the entire 18-day period specified in the superceding indictment.  To

the extent the concern involves the possibility of a future state indictment, an indictment by a

different sovereign is not barred by the right to be free from double jeopardy.  <u>Heath v. Alabama</u>,

474 U.S. 82, 88 (1985).

## CONCLUSION

      Defendant's Motion to Suppress (#42) and Motion to Dismiss (#43) are denied.

      IT IS SO ORDERED.

      Dated this      31st            day of July, 2006.


                         /s/ Garr M. King
                        Garr M. King
                        United States District Judge